On July 20th, 1943, at about 6:45 p.m., an automobile owned by Lieutenant Colonel Edward H. Le Blanc and driven by his wife collided head-on with an omnibus of New Orleans Public Service, Inc., on Metairie Road in Jefferson Parish. As a consequence of the accident, Mrs. Le Blanc received painful personal injuries and the Le Blanc automobile was badly damaged. Claiming that the collision was occasioned by the negligence of the operator of the omnibus in that he was operating the bus in a reckless manner and without exercising a proper lookout; that he failed to drive on his right or proper side of the roadway; failed to slow up in negotiating a curve therein and in that he attempted to pass an automobile parked on his side of the road while the Le Blanc car was approaching from the opposite direction, Colonel and Mrs. Le Blanc instituted this action against Frederick Miller, the busdriver, New Orleans Public Service, Inc., and its liability insurance carrier, Travelers Insurance Company, to recover the damages which they allegedly sustained. Mrs. Le Blanc demands $15,000 for her personal injuries and her husband seeks a total of $5,874 for the damage to the automobile, medical and other expenses defrayed by him, his inconvenience and mental anguish.
Defendants resisted liability in the case on the ground that the accident occurred solely as the result of the negligence of Mrs. Le Blanc. They asserted that the bus driver was free from any fault; that he was operating the omnibus on Metairie Road in a northerly direction from New Orleans at a slow rate of speed and on the right or proper side of the road; that, as the bus was approaching the intersection of Oak Ridge Park and was being brought to a slow stop on the right-hand side of the road in order to discharge a passenger, the Le Blanc automobile, which was travelling in the opposite direction or towards the city of New Orleans, rounded a curve on Metairie Road, slightly north of its intersection with Oak Ridge Park, at a fast and reckless speed on the outside periphery of the curve and crossed, from its own right or proper side of the road, over to its left or wrong side directly into the path of the omnibus and crashed with *Page 295 
great force and violence into and against the left front portion thereof; that the highway was wet and slippery as a consequence of a heavy rain and that the accident resulted from the fault of Mrs. Le Blanc in attempting to negotiate the curve in the road at a high rate of speed under the conditions then prevailing. In the alternative, defendants pleaded the contributory negligence of Mrs. Le Blanc as a bar to plaintiffs' recovery.
After a trial of the case in the lower court, there was judgment dismissing plaintiffs' demand. Wherefore this appeal.
It is clear from the pleadings in the case that the principal matters presented for determination are issues of fact. Hence, we hasten to a discussion of the evidence submitted at the trial by the opposing litigants and their witnesses which, in common with cases of this type, is most conflicting.
The accident occurred on Metairie Road just south of its intersection with Oak Ridge Park on a rainy day at about 6:45 p.m. Metairie Road is a two-way highway running through the Metairie Ridge section of Jefferson Parish and extends from the Orleans Parish line northward to Shrewsbury, Louisiana. It is approximately 30 feet wide, paved with Macadam (or black top) and accommodates traffic proceeding to and from Orleans Parish. The bus of the Public Service was travelling in a northerly direction, or towards Shrewsbury, and had reached or was about to reach Gruber's Bar, a small place of business abutting the lake or right-hand side of the road, when the accident occurred. Just north of this point, there is a wide turn in the road towards the left for vehicles proceeding in a northerly direction and, for vehicles approaching from the opposite direction, the turn in the road is to the right and begins approximately at the corner of Oak Ridge Park, which intersects the riverside of the road slightly north of Gruber's Bar.
Mrs. Le Blanc testifies that, on the day of the accident, she was driving her Buick car from Camp Polk, Louisiana, where her husband was stationed, to the city of New Orleans, a distance of some 260 miles; that she had left Camp Polk at about 12:15 p.m. and had driven continuously to the point where the accident occurred in approximately six hours and a half (or that she had averaged a speed of approximately 40 miles per hour including one stop of 10 minutes which she had made on the way); that, as she approached the curve in the road which began at Oak Ridge Park, she was driving at a speed of 25 or 30 miles per hour; that, when she entered the curve, she noticed the omnibus approaching from the opposite direction; that it was then about 100 feet away from her and was proceeding on its left or wrong side of the road and directly in her path of travel; that she pulled her car over to the shoulder of the road, or as close thereto as safety would permit, but that, notwithstanding this, the bus continued forward in her lane and crashed against the left front side of her automobile.
In support of Mrs. Le Blanc's testimony, plaintiffs produced the following witnesses: Mr. Jules Mendel, Mr. Fred W. Betz, Mr. Albert Ballatine and Mr. Frank Geffs. None of these persons, except Ballatine, claimed to have been eye-witnesses to the accident. Ballatine testified, in substance, that he had been driving his car to the rear of the omnibus at the time of the accident and that he had been following it for quite some distance prior thereto; that he had previously attempted to pass the bus but, due to the fact that the bus was being driven alternately to the right, then to the left and back to the right side of the road, he felt that it would be safer for him not to do so; that he therefore remained to the rear of the bus and that, when the bus reached a point just south of the Oak Ridge Park intersection, it suddenly swerved to the left or wrong side of the road, where it crashed into plaintiffs' car which was coming from the opposite direction. He further says that, after the accident, the bus was straddling the road at the point of impact with its front and facing the left or riverside of the road, and its rear and extending in the direction of Lake Ponchartrain and that the accident upset him to such an extent that "everything got black and I had to leave."
Jules Mendel testified that he was employed as a bartender at Gruber's Bar; that he did not see the accident but that, upon hearing the crash, he immediately left his place of business and went into the street for the purpose of rendering assistance to Mrs. Le Blanc; that the Le Blanc car was on its right side of the road; that its rear right wheel was close to a post near the shoulder of the road and that the front of the car extended somewhat outwardly from the shoulder; that the front of the omnibus was about 10 or 12 feet *Page 296 
south of Gruber's Bar and that, while the front end thereof was on the right or proper side of the highway, its rear was out over the center of the road in the lane of traffic used by cars travelling in the direction of New Orleans. He further says that there was a truck parked in front of Gruber's Bar at the usual bus stop; that the bus was in the rear of this parked truck and that, upon examination of the roadway, he noticed tire marks made by the omnibus on the left-hand or wrong side of the road.
The testimony of Mr. Fred W. Betz, who owns a filling station located just south of Gruber's Bar, is similar to that of Mendel. He did not see the accident but says that he noticed tire marks of the bus on the left or wrong side of the road. However, he differs somewhat with Mendel with respect to the position of the bus after the accident. He asserts that, whereas the automobile was on its extreme right-hand or proper side of the road, the bus was on its wrong side of the road and that the back thereof was only five to six feet away from the curbing on that side in close contact with the Le Blanc car.
Mr. Geffs, who is related by marriage to Mrs. Le Blanc and who came to the scene of the accident five or ten minutes after it occurred, testified that the Le Blanc car was on its right-hand or proper side of the road and that the rear end of the bus wag over the center of the highway. He was, however, unwilling to estimate the distance which separated the rear end of the bus from the curb on the left side of the highway or the distance of the front end of the bus from the curb on the right side.
The testimony produced by the defendants, as we have above stated, is in direct contrast with that submitted by plaintiffs. Miller, the busdriver, declared that, just prior to the collision, he had been driving the bus on the right-hand or proper side of the Metairie Road at a speed of 15 miles per hour; that, as he approached Gruber's Bar, he was given a signal by one of the passengers in the bus to stop at Rose Avenue (which intersects Metairie Road on the lakeside slightly past Gruber's Bar); that, in obedience to this signal, he reduced his speed to five or ten miles per hour and was pulling over to the curb as close as possible in order to discharge his passenger; that, while he was thus proceeding, he saw the Le Blanc automobile rounding the curve; that it was then about 60 or 70 feet from him and that, instead of keeping on its proper side of the road, it crossed over the center line into his traffic lane and collided into the left front end of the bus. He further says that, when he realized that the automobile had come into his path of travel and was going to strike the bus, he immediately applied his brakes but to no avail, and that, after the accident, the right front wheel of the bus was not over a foot and a half from the curbing on the right or proper side of the road, while the rear of the bus extended a little further out in the roadway on an angle.
The statement of the bus driver is corroborated by seven apparently disinterested persons, namely — Misses Lena Fleury, Lula Jones, Gora Roy, Gloria Casey, Ruby Brockhoff, Mrs. Amelia Richter and Mr. Francis Morton, who were passengers in the bus at the time of the accident. Some of these witnesses confirm the bus driver's testimony to a greater degree than others in accordance with their own particular observations. None disagrees and all sustain his evidence to the extent that the accident occurred while the bus was being brought to a stop at or near Gruber's Bar for the purpose of discharging a passenger.
Miss Casey declared that she was seated in the front of the bus; that it was being driven on its right-hand or proper side of the road; that, while it was slowing down to a stop, the Le Blanc automobile, which was coming from the opposite direction, left its side of the road, crossed over to the side on which the bus was travelling and collided with the front thereof.
Miss Fleury, Miss Jones and Miss Roy stated that the bus was travelling at a slow speed on the right-hand or proper side of the road and was coming to a stop when it was struck by the Le Blanc automobile.
Mr. Francis Morton, a practicing attorney of the New Orleans Bar, asserted that he was seated on the third front seat on the left side of the bus; that the bus was travelling on its proper side of the road and was slowing down to a stop for the purpose of discharging passengers; that, while it was so doing, the Le Blanc car struck the bus on its forward left-hand side and that, after the impact, the automobile veered off to the right and came to a stop.
Confronted with the irreconcilable conflict between plaintiffs' and defendants' *Page 297 
evidence, the district judge resolved the matter in defendants' favor. While no written reasons were assigned for the judgment, it is evident that the judge thought that the defendants should prevail either because plaintiffs had not proved their case by a preponderance of evidence or because the evidence submitted by defendants was more reliable than that of the plaintiffs. In view of the fact that the trial judge had the opportunity of seeing the witnesses and hearing them testify, it would be most difficult for us to conclude that his decision is manifestly wrong.
However, counsel for plaintiffs, in arguing that the judgment below is erroneous, point to the evidence which establishes beyond any doubt that, after the accident, the Le Blanc automobile was positioned near a telephone pole on the riverside of the road near the shoulder thereof, and contend that this physical fact confirms the testimony of Mrs. Le Blanc that the bus struck her car while she was driving in her proper traffic lane. This argument overlooks the fact that it has been likewise established that the bus came to a stop by Gruber's Bar on its right or proper side of the road. Hence, unless it can be determined that the bus was being driven in Mrs. Le Blanc's lane of travel prior to the accident, the fact that her car came to rest on its proper side of the road does not afford an answer to the problem. In truth, the correct conclusion in the case can only be reached by weighing the evidence of Mrs. Le Blanc and her witnesses against the testimony produced on behalf of the defendants.
The testimony of Mrs. Le Blanc is supported, in the main, by Ballatine, Mendel and Betz. Ballatine claims to have been an eye-witness to the accident but his testimony does not favorably impress us for the reason, among others, that his statement respecting the position of the bus and the automobile after the accident is at utter variance with the testimony of all of the other witnesses in the case.
Betz and Mendel were not eye-witnesses to the accident and we think that they are mistaken when they say that the tire marks, which they observed on the left-hand side of the wet highway, were made by the bus involved in the accident.
Mrs. Le Blanc is positive that the bus was on her side of the road and that it ran into her car while she was rounding the curve and travelling very close to the riverside shoulder of the road. But equally positive is the testimony of the bus driver that he at no time drove over the center line of the highway and that the Le Blanc automobile, in rounding the curve, crossed over to his side of the road and into his path of travel where it collided with the left front part of the bus. His statement, as we have said, is corroborated by many of the passengers on the bus.
Under the foregoing circumstances, we cannot say that the evidence of Mrs. Le Blanc preponderates over that of the bus driver. On the contrary, when consideration is given to other facts in the case, the conclusion reached by the trial judge seems to be fully justified. Mrs. Le Blanc had driven nearly 260 miles on the day of the accident within approximately six and one-half hours, or at an average speed of 40 miles per hour. She was admittedly travelling 25 to 30 miles per hour at the time of the accident and was engaged in rounding a curve on a wet and slippery road. At that time, the bus driver was approaching the same curve from the opposite direction at a very slow speed. In fact, it has been clearly established by disinterested witnesses that the bus was coming to a stop for the purpose of discharging a passenger and that, prior to and at the time of impact, it was being driven in a normal fashion on its proper side of the road. Therefore, when we consider the relative difference in the rate of travel of the automobile and the bus and the possibility that Mrs. Le Blanc was somewhat exhausted as the result of her long journey which she had pursued at a fairly high rate of speed, the probabilities are that she, in a moment of mental inertness, permitted her automobile to veer to the left (while rounding the curve) and into the opposite side of the highway where the front of her car came in contact with the left front part of the bus.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
WESTERFIELD, J., absent. *Page 298